IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 DEC 14 PM 3:21
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
           DEPUTY CLERK

| | |
|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY,** <br> **Plaintiff,** <br><br> -vs- <br><br> **AXIS SURPLUS INSURANCE COMPANY, FEDERAL INSURANCE COMPANY,** <br> **Defendants.** | **CAUSE NO.:** <br> **A-16-CA-00870-SS** |

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Federal Insurance Company (FIC)'s Motion for Summary Judgment Against Defendant Axis Surplus Insurance Company (Axis) [#81], Axis's Response [#90] in opposition, and FIC's Reply [#96] in support; Intervenor Plaintiff First Mercury Insurance Company (First Mercury)'s Motion for Summary Judgment Against Axis [#85], Axis's Response [#91] in opposition, and First Mercury's Reply [#101] in support; Plaintiff Liberty Mutual Fire Insurance Company (Liberty)'s Motion for Summary Judgment Against Axis [#86], Axis's Response [#95] in opposition, and Liberty's Reply [#97] in support; Defendant Axis's Motion for Summary Judgment Against FIC and First Mercury [#88], FIC's Response [#92] in opposition, First Mercury's Response [#94] in opposition, and Axis's Replies [#98] and [#99] in support; as well as Defendant Axis's Motion for Summary Judgment Against Plaintiff Liberty

[#89], Liberty's Response [#93] in opposition, and Axis's Reply [#100] in support.[1] Having considered the case file and the applicable law, the Court enters the following opinion and order.

## Background

This is an insurance-coverage-dispute case related to an oilfield explosion at a wellsite located on Peeler Ranch in McMullen County, Texas. Glenn Weigang was killed and Abel Pena was seriously injured in the explosion. Jt. App. [#82] at 5. Weigang's children filed a lawsuit against numerous entities involved with the wellsite in the 79th District Court of Jim Wells County, Texas. *See Weigang v. South Texas Oil Field Solutions, et al.*, Case No. 14-12-54-002 (Weigang Lawsuit). Pena intervened in the Weigang Lawsuit, and the parties eventually reached an agreement to settle the case. Liberty Mot. Summ. J [#81] at 3, 6. This lawsuit relates to the rights and obligations of the different insurance companies stemming from this incident.

SEA Eagle Ford, LLC (SEA) and its parent company Sundance Energy, Inc. (Sundance) hired various contractors to perform work at the Peeler Ranch wellsite. SEA entered into a Master Services Agreement with contractor Mesa Southern Well Servicing, LP (Mesa) for Mesa to provide equipment and personnel at the wellsite. *See* Jt. App. [#84] at 373–77 (Mesa MSA). At the time of accident, Weigang and Pena were employed by and working for Mesa. Jt. App. [#82] at 5. Sundance separately contracted with contractor FESCO, Ltd. (FESCO) to provide equipment and personnel at the wellsite. *See* Jt. App. [#84] at 379–84 (FESCO MSA).

FIC and First Mercury both insured SEA and its parent company Sundance. *See* Jt. App. [#82] at 103 (First Mercury's Commercial Excess Liability Policy No. TX-EX-0000030898-01); *id.* at 8, 55 (FIC's General Liability Policy No. 3584-24-66 and FIC's Commercial Excess and

---

[1] The Court requested and considered additional briefing from Axis [#103] and Liberty [#104] on the indemnity status of FESCO, Ltd. *See* Order of November 30, 2017 [#102].

Umbrella Policy No. 7987-01-90). SEA and Sundance were defendants in the Weigang Lawsuit. Jt. App. [#82] at 5.

SEA and Sundance's contractors were also insured at the time of the accident. Mesa was insured by Zurich American Insurance Company (Zurich) and Axis. *See* Jt. App. [#83] at 226 (Zurich's Policy No. GLO 9296632-00); Jt. App. [#84] at 320 (Axis's Excess Liability Policy No. EAU718216/01/2013 to Finley Resources, Inc., Mesa's parent corporation). Liberty insured contractor FESCO. *See* Jt. App. [#82] at 126 (Commercial General Liability Policy No. TB2-641-443736-023).

SEA, Sundance, Mesa, and FESCO were all defendants in the Weigang Lawsuit. Liberty tendered FESCO's defense to Sundance, who in turn tendered its own defense and FESCO's defense to SEA's contractor Mesa. Compl. [#1] at 4. The insurers paid to settle the Weigang Lawsuit. As Mesa's insurers, Zurich paid its policy limit of $1 million and Axis paid $10 million of its $25 million policy limit. Jt. App. [#82] at 5–6. Mutual, FIC, First Mercury, and Liberty each paid their respective policy limits. *Id.*

Liberty filed this lawsuit seeking a declaratory judgment regarding its duty to defend and indemnify in the Weigang Lawsuit. *See* Compl. [#1]. After this case commenced, FESCO's other insurer, Commerce and Industry Insurance Company (CIIC), intervened seeking a declaratory judgment regarding the scope and obligations of the various insurers. *See* CIIC Intervention Compl. [#2]. SEA and Sundance's insurer, First Mercury, also intervened claiming breach of contract against its fellow insurers. *See* First Mercury Intervention Compl. [#54].

The parties have filed numerous claims and counterclaims against each other regarding the rights and obligations arising from the explosion at the Peeler Ranch wellsite. By agreement of the parties, the Court issued a bifurcated scheduling order in this case. *See* Order of April 27,

2017 [#68]. The first phase relates to claims against Axis, and second phase relates to claims against CIIC and FESCO. *Id.* at 2. The parties have filed summary judgment motions related to claims against Axis pursuant to the Court's order. These motions are fully briefed and ripe for consideration.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*,

4

476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

As mentioned above, the briefing in this first phase of this case relates to claims against Axis. Liberty, First Mercury, and FIC have moved for summary judgment on their claims against Axis. *See* Liberty Mot. Summ. J. [#86]; First Mercury Mot. Summ. J. [#85]; FIC Mot. Summ. J. [#81]. Axis has cross-moved for summary judgment on its claims against Liberty, First Mercury, and FIC. *See* Axis Mot. Summ. J. [#88] (Liberty); Axis Mot. Summ. J. [#89] (First Mercury and FIC). The Court will address each party's arguments with respect to Axis below.

### A. Liberty

Liberty has moved for summary judgment on its claims against Axis. *See* Liberty Mot. Summ. J. [#86]. In its motion, Liberty contends its insured FESCO qualifies as an indemnitee under the Mesa MSA, and the full $25 million coverage of the Axis insurance policy to Mesa should be used to cover Mesa's indemnity obligations to FESCO. *Id.* at 8–13. Liberty also asserts it did not waive any subrogation rights against Mesa and Axis. *Id.* at 13–15. Finally, Liberty seeks to recover its settlement payment made in the Weigang Lawsuit and attorney's fees in this action. *Id.* at 15.

Axis counters that Liberty is improperly seeking to shift the entire cost of the accident to its insured, Mesa, who had no fault in the same. Resp. [#95] at 1. According to Axis, the Texas Oilfield Anti-Indemnity Act (TOAIA) limits Mesa's indemnity obligations to either $500,000 or $11 million. *See id.* at 6–12; Axis Mot. Summ. J. [#89] at 4–12. Axis also argues Liberty waived its subrogation rights and FESCO is not an indemnitee of Mesa. *See id.* at 12–16; Resp. [#95] at 12–15.

It is undisputed the TOAIA applies to the Mesa MSA as an agreement "pertaining to a well for oil, gas, or water or to a mine for a mineral." *See* Tex. Civ. Prac. & Rem. Code Ann. § 127.003(a). Generally, the TOAIA voids indemnity agreements that purport to indemnify a person for damage caused by his or her own negligence. *See id.* There is, however, a statutory exception often referred to as the Safe Harbor Provision that permits indemnity agreements supported by liability insurance. *See id.* at § 127.005 (exempting indemnity agreements "if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor.").

The Mesa MSA indemnity agreement falls within the TOAIA Safe Harbor Provision because the parties agreed to purchase liability insurance to support their respective indemnity

obligations. Specifically, SEA and Mesa both agreed to "carry adequate insurance limits to in support of the indemnity agreements" in the Mesa MSA. Jt. App. [#84] at 373; *see also Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 351 (Tex. 2000) ("The amount of coverage each party agrees to provide need not be specified in the agreement that contains the indemnity agreement.") Thus, the TOAIA does not void the indemnity agreement between SEA and Mesa.

The TOAIA does, however, limit indemnity obligations under the Safe Harbor Provision. The particular limit depends on whether the indemnity obligation is mutual or unilateral. *See* Tex. Civ. Prac. & Rem. Code Ann. § 127.005(b) (limiting mutual indemnity obligations); *id.* at § 127.005(c) (limiting unilateral indemnity obligations). The parties disagree on the type of indemnity obligation contained in the Mesa MSA.

The Court finds the Mesa MSA recites a mutual indemnity obligation. The TOAIA defines a "mutual indemnity obligation" as:

> an indemnity obligation in an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral in which the parties agree to indemnify each other and each other's contractors and their employees against loss, liability, or damages arising in connection with bodily injury, death, and damage to property of the respective employees, contractors or their employees, and invitees of each party arising out of or resulting from the performance of the agreement.

*Id.* at § 127.001(4). Consistent with the above definition, both SEA and Mesa reciprocally agree in the Mesa MSA "to protect, defend, indemnify and hold harmless" the other and each other's contractors and their employees. Jt. App. [#84] at 373. Nonetheless, Axis contends the Mesa MSA recites a unilateral indemnity obligation because SEA was only required to carry "adequate" insurance to cover its indemnity obligations. *See* Axis Mot. Summ. J. [#89] at 4–5. This argument fails because a mutual indemnity obligation only requires the parties agree to indemnify each other, not that they purchase insurance to cover the indemnity obligations. *See*

7

Tex. Civ. Prac. & Rem. Code Ann. § 127.001(4). The indemnity agreement in the Mesa MSA meets the statutory definition of a mutual indemnity obligation.

Under the TOAIA, mutual indemnity obligations are limited to "the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee." *Id.* at § 127.005(b). A party providing the lower amount of insurance may not enforce its right to indemnity beyond its own coverage. *See EXL Petroleum, L.P. v. Cudd Pressure Control, Inc.*, MO-14-CA-74, 2015 WL 12591364, at *1 (W.D. Tex. July 31, 2015) (citing *Ken Petroleum Corp.*, 24 S.W.3d at 350). Stated differently, the lowest common denominator of insurance coverage between the parties will control. *Ranger Ins. Co. v. Am. Int'l. Specialty Lines Ins. Co.*, 78 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In this manner, the TOAIA "prevent[s] overreaching by one party vis a vis another," while still allowing "parties to oil-field contracts to mutually indemnify one another to the extent that there is in fact mutuality of obligation." *Ken Petroleum Corp.*, 24 S.W.3d at 350.

Here, the TOAIA limits Mesa's indemnity obligations to $11 million. It is undisputed SEA carried $11 million in liability insurance to satisfy its indemnity obligations under the Mesa MSA. Mesa purchased more insurance than SEA, including a $1 million policy with Zurich and $25 million policy with Axis. *See* Jt. App. [#83] at 226; Jt. App. [#84]. Mesa's indemnity obligations are therefore capped at $11 million, the lowest common denominator of insurance coverage between the parties. *See Ken Petroleum Corp.*, 24 S.W.3d at 350. This limit represents the insurance coverage "each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee." *See* Tex. Civ. Prac. & Rem. Code Ann. § 127.005(b).

Liberty's arguments for seeking the full limits of Mesa's insurance policies are unavailing. Liberty attempts to overcome the analysis in *Ken Petroleum* by relying on the 1999 statutory amendment to the TOAIA Safe Harbor Provision shown below:

> With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to ~~provide in equal amounts to~~ **obtain for the benefit of** the other party as indemnitee.

*Compare* Tex. Civ. Prac. & Rem. Code Ann. § 127.005(b) (1999), *and id.* (1995). According to Liberty, the new statutory language extends an indemnitor's obligation to its full insurance limits when the amount of insurance coverage is not specified in the indemnity agreement. *See* Liberty Mot. Summ. J. [#86] at 10–12. However, the legislative history cited by Axis supports that the 1999 statutory amendment was intended to address the same precedent overruled in *Ken Petroleum*. *See* Resp. [#95] 5–6. The revised statutory language clarifies, as the Texas Supreme Court did in *Ken Petroleum*, parties to a mutual indemnity agreement are not required to agree to have insurance in the same dollar amount. *See Ken Petroleum Corp.*, 24 S.W.3d at 350. The Court finds no basis in the revised statutory language for deviating from the holding in *Ken Petroleum*: "the party providing the lower amount of insurance may not enforce its right to indemnity beyond its own amount of coverage." *Id.*[2]; *see also EXL Petroleum, L.P.*, 2015 WL 12591364, at *1 (applying this rule to the 1999 version of TOAIA). For these reasons, Mesa's indemnity obligations are limited to the $11 million of combined insurance coverage retained by SEA.

The parties also disagree on whether FESCO is entitled to indemnity under the Mesa MSA. Liberty asserts FESCO is a contractor, subcontractor, consultant, or invitee of SEA, and

---

[2] The Texas Supreme Court's conclusion in *Ken Petroleum* was independent of the "equal amounts" language later removed from the statue, and instead based on the public policy goals of the TOAIA. *See Ken Petroleum Corp.*, 24 S.W.3d at 350. Accordingly, this Court finds the holding of *Ken Petroleum* to be applicable to the revised version of the statute at issue in this case.

9

therefore entitled to indemnity from Mesa. *See* Liberty Mot. Summ. J. [#86] at 12–13 (citing affidavit of Cathy Anderson, Chief Financial Officer of Sundance and SEA Eagle Ford). Axis disagrees, relying on the distinction between SEA and Sundance: Mesa contracted with SEA, whereas FESCO contracted with SEA's parent company, Sundance. Resp. [#95] at 12–13, Axis Mot. Summ. J. [#89] at 14–16. Under a strict construction of the indemnity agreement, Axis submits, FESCO is not entitled to indemnity under the Mesa MSA. *Id.*

The Court concludes FESCO is an indemnitee under the Mesa MSA. Mesa agreed to indemnify and hold harmless SEA, "its contractors . . . and subcontractors of any tier, co-interest owners, joint venturers, co-lessees, and invitees, and its/their affiliates, shareholders, officers, directors, employees . . . agents, consultants, and servants ('Company Group')" for all claims related to death or injury suffered by Mesa's employees. Jt. App. [#84] at 373. It is undisputed SEA was the licensed operator of the wellheads at Peeler Ranch, and FESCO was present at the wellsite to assist with the extraction of oil for the benefit of SEA and Sundance. *See* Liberty Mot. Summ. J. [#86-1] Ex. 1 (Anderson Aff.) at ¶¶ 3, 6. Under these facts, FESCO qualifies as an invitee of SEA. *See Texas Power & Light Co. v. Holder*, 385 S.W.2d 873, 885 (Tex. Civ. App.—Tyler 1964), *writ ref'd n.r.e.*, 393 S.W.2d 821 (Tex. 1965) (defining invitee as "a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or the occupant or for their mutual advantage."); *see also Primrose Operating Co., Inc. v. Jones*, 102 S.W.3d 188, 195 (Tex. App.—Amarillo 2003, pet. denied) (classifying well operator as occupier of the premises).[3] Accordingly, FESCO is entitled to indemnity from Mesa under the terms of the Mesa MSA as an invitee of SEA.

---

[3] Although the Mesa MSA is governed by Colorado law, both parties propose Texas law should apply in determining FESCO's status. *See* Axis Mot. Summ. J. [#89] at 15, n.2. The Court's conclusion would be the same under Colorado law as the definition for invitee is largely the same as it is in Texas. *See* Colo. Rev. Stat. Ann. § 13-

10

Finally, Axis's arguments regarding waiver of subrogation rights are unavailing. Axis contends Liberty waived its subrogation rights in the insurance policy issued to FESCO. *See* Axis. Mot. Summ. J. [#89] at 12–14. In an endorsement to the referenced policy, Liberty waived subrogation rights against "[a]ny person or organization with whom [FESCO] have agreed in writing to waive any right of recovery prior to loss." *See* Jt. App. [#83] at 166 (Form CG 24040509). However, as Liberty points out, FESCO did not agree in writing with Mesa to waive any right of recovery against Mesa. The FESCO MSA—between Sundance and FESCO—recites a mutual indemnity agreement in which FESCO agreed to indemnify and hold harmless Sundance, "its contractors . . . and subcontractors of any tier, co-interest owners, joint venturers, co-lessees, and invitees, and its/their affiliates, shareholders, officers, directors, employees . . . agents, consultants, and servants" for all claims "arising in connection herewith in favor of [FESCO], its subcontractors, invitees, or their employees or representatives on account of bodily injury, death or damage." Jt. App. [#84] at 379. The underlying claims from the Weigang Lawsuit do not fall within the scope of FESCO's indemnity agreement recited above.[4] In essence, Axis seeks to expand Liberty's subrogation waiver to all indemnity parties recited in the FESCO MSA regardless of whether FESCO agreed in writing directly with those parties or whether the indemnity agreement encompasses the underlying insurance claims at issue. The waiver language, however, does not support such an expansive reading, and the Court concludes Liberty did not waive its subrogation rights against Axis or Mesa in this case.

---

21-115 ("'Invitee' means a person who enters or remains on the land of another to transact business in which the parties are mutually interested. . . . .").

[4] Because the Weigang Lawsuit involved claims by Mesa's employees, it fell within the indemnity agreement in the Mesa MSA. *See* Jt. App. [#84] at 373 (limiting Mesa's indemnity for all claims "arising in connection herewith in favor of [Mesa], its subcontractors, invitees, or their employees or representatives on account of bodily injury, death or damage." The indemnity agreement in the FESCO MSA, by contrast, does not extend to claims by Mesa's employees, and thus does not apply here.

In sum, the Court finds FESCO is entitled to indemnification from Mesa, and these indemnity obligations are limited by the TOAIA to the $11 million Mesa and its insurers have already paid to settle the Weigang Lawsuit.

## B. First Mercury and FIC

First Mercury and FIC have each moved for summary judgment against Axis, seeking to recover funds they paid to settle the Weigang Lawsuit on behalf of their insureds, Sundance and SEA. *See* First Mercury Mot. Summ. J. [#85]; FIC Mot. Summ. J. [#81]. The arguments and legal authorities presented by First Mercury and FIC are similar to those raised by Liberty Mutual and addressed by the Court in the section above. *See* Liberty Mot. Summ. J. [#86] at 8, n7 ("The argument regarding the limits of the Axis Policy under the TOAIA is the same for Liberty Mutual, Federal, and First Mercury").

Axis has cross-moved for summary judgment against First Mercury and FIC, relying on a subset of arguments from its summary judgment briefing against Liberty. *See* Mot. Summ. J. [#92]; *See* Mot. Summ. J. [#92].

For the same reasons explained above[5], the Court finds Mesa's indemnity obligations are limited by the TOAIA to the $11 million Mesa and its insurers have already paid to settle the Weigang Lawsuit. *See supra* Section II.A.

## Conclusion

Accordingly,

IT IS ORDERED that Federal Insurance Company Motion for Summary Judgment [#81] is DENIED;

---

[5] As noted, the arguments and law in the First Mercury and FIC briefing are largely the same as those addressed earlier in this opinion. After reviewing all pending summary judgment briefing, the Court finds its analysis and conclusions set forth in Section II.A fully consider and address the arguments raised by the parties.

IT IS FURTHER ORDERED that First Mercury Insurance Company's Motion for Summary Judgment [#85] is DENIED;

IT IS FURTHER ORDERED that Liberty Mutual Fire Insurance Company's Motion for Summary Judgment [#86] is GRANTED in part and DENIED in part as described in this opinion;

IT IS FURTHER ORDERED that Axis Surplus Insurance Company's Motion for Summary Judgment against Federal Insurance Company and First Mercury Insurance Company [#88] is GRANTED in part and DENIED in part as described in this opinion;

IT IS FINALLY ORDERED that Axis Surplus Insurance Company's Motion for Summary Judgment against Fire Insurance Company [#89] is GRANTED in part and DENIED in part as described in this opinion.

SIGNED this the 14th day of December 2017.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE